# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LEANDREW SARTIN,**

    **Plaintiff,**

v.                          Case No. 20-CV-118

**OFFICER ADERMAN,**

    **Defendant.**

## SCREENING ORDER

Plaintiff Leandrew Sartin, a Wisconsin state inmate, filed a *pro se* complaint under 42 U.S.C. § 1983 alleging that the defendant violated his constitutional rights by interfering with his mail while he was confined at the Milwaukee Secure Detention Facility. This order resolves Sartin's motion for leave to proceed without prepaying the filing fee, his motions relating to entering evidence, his motion to award relief, his motion to appoint counsel, and screens his complaint.

The court has jurisdiction to resolve Sartin's motions and to screen the complaint in light of Sartin's consent to the full jurisdiction of a magistrate judge and the Wisconsin Department of Justice's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Wisconsin Department of Justice and this court.

1. **Motion for Leave to Proceed without Prepaying the Filing Fee**

The Prison Litigation Reform Act (PLRA) applies to this case because Sartin was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

On February 6, 2020, the court ordered Sartin to pay an initial partial filing fee of $1.87. (ECF No. 6.) Sartin paid that fee on February 20, 2020. The court will grant Sartin's motion for leave to proceed without prepaying the filing fee. He must pay the remainder of the filing fee over time in the manner explained at the end of this order.

2. **Screening the Complaint**

   *2.1 Federal Screening Standard*

Under the PLRA the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under color of state law. *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes *pro se* complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

*2.2 Sartin's Allegations*

The allegations in Sartin's complaint are challenging to follow. The following is the court's best attempt at organizing and articulating Sartin's allegations.

3

Sartin experienced problems receiving his mail at Milwaukee Secure Detention Facility (MSDF) in October 2019. In all, the mailroom held on to his mail for 14 days. On October 15, 2019, he wrote to Captain Groark (not a defendant) but did not receive a response. He sent a request slip to the MSDF mailroom on October 17, 2019, asking whether it had his mail. It sent his request slip back, stating it did not hold mail but also sent it back "with [his] mail they held for two weeks." (ECF No. 1 at 3.) Sartin sent another request slip to the mailroom on October 20, 2019, and asked about the whereabouts of the 9x12 envelope in which his mail had been sent because it would have the name of who sent it, the bar code, the date and time it was sent, and the postage. Someone responded stating the mail room did not hold mail.

Sartin was told to send a request slip to the mailroom supervisor. He sent a letter to Lieutenant Berndt (not a defendant) and was told they cleared out the mail each day and that they had not seen his mail. With respect to the envelope his mail came in, Berndt said it may have been damaged. An inmate complaint Sartin filed came back rejected. He appealed that rejection to the Department of Corrections, which sent it back saying the Corrections Complaint Examiner would not review a rejected complaint.

Sartin eventually learned that defendant Officer Aderman emptied a cardboard priority envelope and took out all of the individual pieces of mail. He then kept Sartin's mail for two weeks. Aderman apologized for the delay and told Sartin he would not be able to keep the cardboard envelope because it was contraband. Sartin points out that no one ever told him that he had received contraband or that

4

his property was going to be destroyed (the court understands him to mean the envelope was destroyed). Sartin alleges that Aderman's actions were intentional and meant to prevent him from hearing from his family and friends, as well as from lawyers and the court system. He alleges that, as a result of Aderman holding on to his mail, he has lost contact with his family and friends. This has caused him to need to see a psychiatrist for depression.

*2.3 Analysis*

As stated above, Sartin's complaint is difficult to follow. The court understands him to allege that the institution received an envelope of mail for him, that Aderman took that envelope, emptied its contents, discarded the envelope, and then held on to Sartin's mail for two weeks before giving it to Sartin.

"[P]risoners have protected First Amendment interests in both sending and receiving mail." *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). This includes a right to receive mail without "inordinate" delay where such a delay is unjustified. *Antonelli v. Sheahan,* 81 F.3d 1422, 1431-32 (7th Cir.1996).

Sartin does not allege that he experienced persistent or repeated delays in receiving his mail. He alleges only that, on one occasion, Aderman held on to his mail for two weeks. That does not amount to a constitutional violation. For example, in *Zimmerman v. Trible*, 226 F.3d 568, 572–73 (7th Cir. 2000), the Court of Appeals for the Seventh Circuit found that a single 24-day delay in the plaintiff being given a letter from his fiancé was "simply not enough" to establish a constitutional violation. More recently, in *Schroeder v. Drankiewicz*, 519 Fed. Appx. 947, 950–51 (7th Cir.

5

2013), the Seventh Circuit held that a two-month delay in a prisoner being able to send a piece of mail was "not an injury of constitutional dimension." The two-week delay in receiving his mail that Sartin alleges Aderman caused does not violate the constitution. Therefore, his complaint does not state a claim upon which relief can be granted. However, the court will afford Sartin an opportunity to amend his complaint for the reasons explained below.

   3. *Motions to Enter New Evidence*

Sartin also filed two motions to enter new evidence. (ECF Nos. 8, 12.) In the first Sartin complains about his legal loan and suggests that the mailroom is somehow manipulating his access to his legal loan. (*See* ECF No. 8.) In the second motion Sartin alleges that his release date is being intentionally improperly calculated. (*See* ECF No. 12.) Sartin also filed a motion that was entered as a motion to appoint counsel but is, in substance, primarily another motion asking the court to enter new evidence. (ECF No. 11.) In this motion Sartin alleges that he was placed in segregation and received a conduct report. He suspects that the reason stated (his wearing a do-rag) was not the real reason and was instead in response to his complaints about his mail.

None of these motions presents new or additional evidence about the delay Sartin experienced in receiving his mail in October 2019. However, the motions suggest that Sartin believes that he is experiencing issues with his legal loan, release date, and conduct reports/housing status because he complained about issues with his mail. That is, Sartin appears to be saying he is experiencing these things in

6

retaliation for complaining about his mail, and retaliation is a valid claim under § 1983.

Therefore, the court will deny Sartin's motions to enter new evidence but will afford him the opportunity to file an amended complaint based on the allegations in his motions. The court notes that, to state a claim for retaliation, Sartin must allege "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). In other words, Sartin will need to explain the manner(s) in which he complained about his mail, what wrong(s) he believes he experienced as a result, and how complaining about the delay in receiving his mail is connected to the alleged wrong(s). Sartin's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his constitutional rights.

The court is enclosing a copy of its complaint form and instructions. Sartin must use the form when filing an amended complaint. He also must list all of the defendants he intends to sue in the caption of his amended complaint. He should use the spaces on pages two and three to allege the key facts that give rise to the claims he wishes to bring and to describe which defendants he believes committed the violations that relate to each claim. If the space is not enough, Sartin may use up to five additional sheets of paper. The amended complaint takes the place of the prior

7

complaint and must be complete without reference to his prior complaint. The court also notes that all relevant information must be in one document. Sartin cannot add new allegations to his lawsuit by filing motions to add more evidence or information.

4. *Motion to Award Relief Sought*

Sartin also filed a motion asking the court to award him the relief he seeks. He reiterates why he believes he is entitled to relief based on Aderman's delay in giving him his mail. The court has already found that these allegations do not state a constitutional claim. But even if they did, Sartin's motion is unnecessary. Sartin must go through the process of litigating his case to determine if he is entitled to any sort of relief. He cannot get it by filing a motion. The court denies his motion.

5. *Motion to Appoint Counsel*

As noted above, Sartin submitted a motion entitled "Motion to Enter New Evidence for [Court Case No. 20-CV-118]" that was entered as a motion to appoint counsel. (ECF No. 11.) Most of that motion outlines some of the wrongs he believes he has faced at his institution following the filing of this lawsuit. However, he does also ask that the court appoint him an attorney.

The court has discretion to recruit a lawyer for individuals who cannot afford to hire one in a civil case. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few

8

lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Pennewell v. Parish et al.,* 923 F.3d 486, 490 (7th Cir. 2019), (quoting *Pruitt v. Mote,* 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. *Pickett v. Chicago Transit Authority,* 930 F.3d 869, 871 (7th Cir. 2019). To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell*, 923 F.3d at 490. The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." *Id*. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id*. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical

9

limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491.

Sartin has failed to demonstrate that he tried to find an attorney to represent him. The court will deny his motion for that reason. If Sartin decides to renew his motion later in the case, he should be aware that nearly every *pro se* plaintiff, prisoners and non-prisoners alike, lack knowledge of and experience with the rules and procedures governing litigation. And many of them ask the court for help in finding an attorney to represent them. As a result, the demand for volunteer attorneys is high. But the supply of attorneys who have the time and ability to represent inmates *pro bono* is low. Should Sartin renew his motion, he should be sure to explain the specific challenges he believes he will face trying to litigate his case on his own. He should also make sure to include proof that he tried to find an attorney. The court denies the motion without prejudice.

6. *Conclusion*

**THEREFORE, IT IS ORDERED** that Sartin's motion for leave to proceed without prepaying the filing fee (ECF No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that the complaint fails to state a claim. Sartin may file an amended complaint that complies with the instructions in this order on or before **July 1, 2020**. If Sartin files an amended complaint by the deadline, the court will screen the amended complaint under 28 U.S.C. § 1915A. If Sartin does not file an amended complaint by the deadline, the court will dismiss this case based on

10

his failure to state a claim in his original complaint and will issue him a "strike" under 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that the Clerk's Office mail Sartin a blank prisoner complaint form and a copy of the guide entitled "Answers to Prisoner Litigants' Common Questions," along with this order.

**IT IS FURTHER ORDERED** that Sartin's motions to enter new evidence (ECF Nos. 8, 12) are **DENIED**.

**IT IS FURTHER ORDERED** that Sartin's motion to award relief sought (ECF No. 10) is **DENIED**.

**IT IS FURTHER ORDERED** that Sartin's motion to appoint counsel (ECF No. 11) is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that the agency having custody of Sartin shall collect from his institution trust account the $348.13 balance of the filing fee by collecting monthly payments from Sartin's prison trust account in an amount equal to 20 percent of the preceding month's income credited to Sartin's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Sartin is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this order along with his remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Sartin is confined.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

Sartin is further advised that failure to make a timely submission may result in the dismissal of this case for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

12

Dated at Milwaukee, Wisconsin this 2nd day of June, 2020.

*William E. Duffin*
WILLIAM E. DUFFIN
U.S. Magistrate Judge